1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT MATTHEW GONZALES,                    No. 2:15-cv-1771 DB

12                 Plaintiff,

13          v.                                     ORDER

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social Security,

15

16                 Defendant.

17

18          This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment.[1]  Plaintiff argues that the Administrative Law Judge's

20   treatment of the medical opinion evidence and the subjective testimony constituted error.  For the

21   reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social

22   Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

23                                  PROCEDURAL BACKGROUND

24          On April 27, 2012, plaintiff filed applications for Disability Insurance Benefits ("DIB")

25   under Title II of the Social Security Act ("the Act") and for Supplemental Security Income

26   ("SSI") under Title XVI of the Act alleging disability beginning on March 24, 2012.  (Transcript

27

28   [1]  Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant
     to 28 U.S.C. § 636(c).  (See ECF Nos. 8 & 9.)

                                                    1

1 ("Tr.") at 225-40.)  Plaintiff's applications were denied initially, (id. at 137-42), and upon

2 reconsideration.  (Id. at 145-55.)

3        Thereafter, plaintiff requested a hearing which was held before an Administrative Law

4 Judge ("ALJ") on November 5, 2013.  (Id. at 38-61.)  Plaintiff was represented by an attorney and

5 testified at the administrative hearing.  (Id. at 38-39.)  In a decision issued on December 12, 2013,

6 the ALJ found that plaintiff was not disabled.  (Id. at 32.)  The ALJ entered the following

7 findings:

8              1.  The claimant meets the insured status requirements of the Social
                Security Act through December 31, 2012.
9

10             2.  The claimant has not engaged in substantial gainful activity
                since September 15, 2007, the alleged onset date (20 CFR 404.1571
11              *et seq.*, and 416.971 *et seq.*).

12             3.  The claimant has the following severe impairments:
                degenerative disc disease with radiculopathy, depression, post-
13              traumatic stress disorder (PTSD), amnestic disorder, hypertension,
                and obesity (20 CFR 404.1520(c) and 416.920(c)).

14             4.  The claimant does not have an impairment or combination of
                impairments that meets or medically equals the severity of one of
15              the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
                (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
16              and 416.926).

17             5.  After careful consideration of the entire record, the undersigned
                finds that the claimant has the residual functional capacity to
18              perform work activities with the following limitations: he can lift
                and carry 10 pounds frequently and 20 pounds occasionally.  He
19              can stand for 6 hours in an 8-hour workday with normal breaks.  He
                can walk for 6 hours in an 8-hour workday with normal breaks.  He
20              can sit for 6 hours in an 8-hour workday with normal breaks.  He is
                limited to no more than occasional pushing and pulling with the left
21              lower extremity.  He can never climb ladders, ropes, or scaffolds.
                He can occasionally balance, stoop, kneel, crouch, crawl, and climb
22              ramps and stairs.  He can never work around hazards, such as
                dangerous moving machinery and unprotected heights.  In addition,
23              he is limited to simple, routine, and repetitive tasks.

24             6.  The claimant is unable to perform any past relevant work (20
                CFR 404.1565 and 416.965).
25

26             7.  The claimant was born on September 1, 1978 and was 29 years
                old, which is defined as a younger individual age 18-49, on the
                alleged disability onset date (20 CFR 404.1563 and 416.963).
27

28             8.  The claimant has at least a high school education and is able to
                communicate in English (20 CFR 404.1564 and 416.964).

2

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 18-31.)

On June 24, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's December 12, 2013 decision.  (Id. at 1-4.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 20, 2015.  (ECF No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm."  McCartey v. Massanari,  298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step process has been summarized as follows:

3

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

APPLICATION

Plaintiff's pending motion asserts the following two principal claims[2]: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of the subjective testimony constituted error.  (Pl.'s MSJ (ECF No. 16) at 6-18.[3])

I.    **Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because a

---

[2]  The court has reordered and reorganized plaintiff's claims for purposes of clarity and efficiency.

[3]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A.  Physical Impairment—Dr. Zoraya Zuniga and Dr. George Hisatomi

With respect to the opinions offered by these physicians, the ALJ's decision states:

> Zoraya Zuniga, M.D., who has treated the claimant since August 2012, assessed on May 1, 2013 that the claimant was limited to less than sedentary exertion and needed to take unscheduled breaks throughout the a workday.  George Hisatomi, M.D. another treating physician stated on in (sic) October 2006 and November 2006 that the claimant was limited to no lifting and no operation of commercial vehicles.  These opinions are given little weight because they are inconsistent with the general absence of positive clinical signs concerning the claimant's back and lower extremities in the objective medical evidence after July 2007.

(Tr. at 28) (citations omitted).

The ALJ's decision, however, acknowledged that a January 9, 2008 MRI of plaintiff's lumbar spine "showed moderate foraminal narrowing and moderate axillary recess narrowing at the L5-S1 level," as well as mild "disc bulge and associated axillary recess narrowing at the L4-5 . . . ."  (Id. at 22.)  That MRI also found the "potential for encroachment on the left S1 nerve root" at the L5-S1 level.  (Id. at 414.)

1      Moreover, the ALJ's decision also acknowledged that:

2              Diagnostic images of his lumbar spine dated October 29, 2011 and
               May 18, 2013 indicated degenerative disc disease.  An MRI of his
3              lumbar spine dated August 16, 2013 showed disc protrusions at the
               L4-5 and L5-S1 levels with nerve root displacement, disc
4              narrowing, disc desiccation, and retrolisthesis.

5   (Id. at 22-23) (citations omitted).  Imaging from June 13, 2013, also revealed "very shallow

6   scoliosis of the lower thoracic spine convex right," and mild degenerative changes.  (Id. at 458.)

7          In this regard, the opinions of Dr. Zuniga and Dr. Hisatomi were supported by objective

8   medical evidence after July 2007.[4]  The ALJ also rejected the opinions of these treating

9   physicians by asserting they were "inconsistent with the adequate physical functioning that the

10  claimant exhibited during orthopedic consultative examinations conducted on May 25, 2011 and

11  July 25, 2012."  However, there is more than a six-year span of time between the October 2006

12  opinion of Dr. Hisatomi and the May 1, 2013 opinion of Dr. Zuniga.  That on two days during

13  those six years, two examining physicians found that plaintiff displayed "adequate physical

14  functioning" is not a specific and legitimate reason for rejecting the opinions of two treating

15  physicians.

16         Finally, the ALJ also rejected the opinions of Dr. Zuniga and Dr. Hisatomi because they

17  were "inconsistent with the routine and conservative nature of the treatment" of plaintiff's "back

18  disorder."  (Id. at 28.)  Plaintiff testified, however, that he "had no [insurance] coverage" and was

19  "paying out of pocket" to cover his costs.[5]  (Id. at 48-49.)  The ALJ's decision acknowledged that

20  plaintiff's "inability to afford medical treatment might have been due to a lack of health insurance

21  . . . ."  (Id. at 23.)  "Disability benefits may not be denied because of the claimant's failure to

22  obtain treatment he cannot obtain for lack of funds."  Gamble v. Chater, 68 F.3d 319, 321 (9th

23  Cir. 1995).

24         Moreover, it appears plaintiff's treatment included medications such as Norco and

25  methadone.  (Tr. at 43, 392.)  See Childress v. Colvin, Case No. 13-cv-3252 JSC, 2014 WL

26  _____

27  [4]  The court is aware that some of the evidence discussed postdates the opinion of Dr. Zuniga, and
    all of it postdates that opinion of Dr. Hisatomi.  It was the ALJ, however, that elected to reject
28  their opinions based on "objective medical evidence after July 2007."  (Tr. at 28.)
    [5]  Dr. Zuniga's opinion states that plaintiff was "unable to afford MRI."  (Tr. at 432.)

1    4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of

2    [Norco] (for several years) is 'conservative'"); Aguilar v. Colvin, No. CV 13-08307-VBK, 2014

3    WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly

4    conservative treatment when he has been prescribed strong narcotic pain medications.").

5            In this regard, the ALJ failed to offer specific and legitimate reasons supported by

6    substantial evidence in the record for rejecting the opinions of Dr. Zoraya Zuniga and Dr. George

7    Hisatomi.

8            **B.      Mentail Impairment—Dr. Zoraya Zuniga and Dr. Les P. Kalman**

9            In analyzing the opinion evidence related to plaintiff's mental impairments, the ALJ's

10   decision states:

11                   In terms of the claimant's mental functioning, Dr. Zuniga also
                     stated on May 1, 2013 that the claimant's symptoms would
12                   frequently interfere with his attention and concentration and that the
                     claimant was limited to low stress jobs. Dr. Kalman, a psychiatrist[6]
13                   who examined the claimant on October 25, 2013, found that the
                     claimant could not accept instructions or respond appropriately to
14                   criticism from supervisors 15% to 49% of the time during an 8-hour
                     workday. The claimant could not perform detailed tasks, maintain
15                   attention and concentration for 2 hours at a time, perform activities
                     within a schedule, maintain regular attendance, be punctual within
16                   customary tolerances, and complete a normal workday or
                     workweek without interruptions from psychiatric symptoms 10% to
17                   14% of the time during an 8-hour workday. Dr. Kalman further
                     assessed that the claimant was expected to be absent from work 4
18                   days per month.

19   (Tr. at 28.)

20           The ALJ, however, afforded these decisions "little weight." (Id.) In this regard, the ALJ

21   asserted that these opinions "understate the claimant's mental capacity and are inconsistent with

22   the general absence of evidence of specialized mental health treatment in the record." (Id.) The

23   ALJ's decision, however, acknowledged that plaintiff's "inability to afford specialized mental

24   health treatment might have been due to a lack of health insurance . . . ." (Id. at 24.) And, the

25   Ninth Circuit has

26   
27   [6] The opinions of psychiatrists are generally entitled to greater weight. See Benecke v. Barnhart,
     379 F.3d 587, 594 n.4 (9th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(5)) ("opinion of a
28   specialist about medical issues related to his or her area of specialty'" should be given greater
     weight).

                                                7

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999)

(quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Moreover,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

The ALJ also found that Dr. Zuniga and Dr. Kalman's opinions were "inconsistent with adequate mental functioning" found at three mental consultative examinations. (Tr. at 28.) However, one of the mental examinations cited by the ALJ to support this finding was Dr. Kalman's examination. (Id.) That examination found that plaintiff was "depressed, frustrated." (Id. at 548.) His "affect was restricted." (Id.) "Vegetative signs included insomnia with nightmares and pain, 30 pound weight gain because of decreased activity, depressed memory, decreased energy."[7] (Id.)

Moreover,

> [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

---

[7] Another examination cited by the ALJ found plaintiff's "mood was anxious and depressed." (Tr. at 352.)

8

1   Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d

2   1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the

3   overall diagnostic picture he draws.  That a person who suffers from severe panic attacks, anxiety,

4   and depression makes some improvement does not mean that the person's impairments no longer

5   seriously affect her ability to function in a workplace."); Embrey, 849 F.2d at 422 ("The

6   subjective judgments of treating physicians are important, and properly play a part in their

7   medical evaluations.").

8          Finally, the ALJ also rejected these opinions by asserting that they were "inconsistent with

9   the claimant's generally adequate daily living activities and relatively normal social activities" as

10  discussed elsewhere in the decision.  (Tr. at 28.)  Those daily activities include "visiting family

11  and friends, talking on the telephone, going to the grocery store, and going out to dinner,"

12  watching television, and using a computer.  (Id. at 26.)

13         However,

14              [t]he critical differences between activities of daily living and
                activities in a full-time job are that a person has more flexibility in
15              scheduling the former than the latter, can get help from other
                persons . . . and is not held to a minimum standard of performance,
16              as she would be by an employer.  The failure to recognize these
                differences is a recurrent, and deplorable, feature of opinions by
17              administrative law judges in social security disability cases.

18  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

19         In this regard, the ALJ failed to offer specific and legitimate reasons supported by

20  substantial evidence in the record for rejecting the opinions of Dr. Zoraya Zuniga and Dr. Les P.

21  Kalman.

22         Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's

23  treatment of the medical opinions offered by of Dr. Zoraya Zuniga, Dr. George Hisatomi, and Dr.

24  Les P. Kalman constituted error.

25  ////

26  ////

27  ////

28  ////

1    **II.    Subjective Testimony**

2          Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the third party

3    statement offered by plaintiff's mother constituted error.  (Pl.'s MSJ (ECF No. 16) at 12-15, 17-

4    18.)

5          **A.    Plaintiff's Testimony**

6          The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's

7    credibility as follows:

8                To determine whether a claimant's testimony regarding subjective
                 pain or symptoms is credible, an ALJ must engage in a two-step
9                analysis.  First, the ALJ must determine whether the claimant has
                 presented objective medical evidence of an underlying impairment
10               which could reasonably be expected to produce the pain or other
                 symptoms alleged.  The claimant, however, need not show that her
11               impairment could reasonably be expected to cause the severity of
                 the symptom she has alleged; she need only show that it could
12               reasonably have caused some degree of the symptom.  Thus, the
                 ALJ may not reject subjective symptom testimony . . . simply
13               because there is no showing that the impairment can reasonably
                 produce the degree of symptom alleged.
14
                 Second, if the claimant meets this first test, and there is no evidence
15               of malingering, the ALJ can reject the claimant's testimony about
                 the severity of her symptoms only by offering specific, clear and
16               convincing reasons for doing so . . . .

17   Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks

18   omitted).  "The clear and convincing standard is the most demanding required in Social Security

19   cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At

20   the same time, the ALJ is not required to believe every allegation of disabling pain, or else

21   disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112

22   (9th Cir. 2012).

23         "The ALJ must specifically identify what testimony is credible and what testimony

24   undermines the claimant's complaints."  Valentine v. Commissioner Social Sec. Admin., 574

25   F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

26   599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

27   things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

28   testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

1  record, and testimony from physicians and third parties concerning the nature, severity, and effect

2  of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59

3  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

4  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

5  record, the court "may not engage in second-guessing."  Id.

6       Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

7  be expected to cause the alleged symptoms, but that plaintiff's statements concerning the

8  intensity, persistence, and limiting effects of those symptoms were not entirely credible.  (Tr. at

9  25.)  In this regard, the ALJ founding that plaintiff's "allegations of debilitating physical and

10 mental symptoms are not well supported by the medical evidence of record."  (Id.)

11      However, "after a claimant produces objective medical evidence of an underlying

12 impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of

13 medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart,

14 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir.

15 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her

16 fatigue."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject

17 a claim for disability simply because a claimant fails to produce medical evidence supporting the

18 severity of the pain, there would be no reason for an adjudicator to consider anything other than

19 medical findings.").

20      The ALJ also asserted that plaintiff's treatment for "chronic back pain has been generally

21 conservative," and that there was "little evidence of specialized mental health treatment . . . ."

22 (Id. at 25.)  As noted above, in addressing the ALJ's treatment of the medical opinion evidence,

23 the court finds that these are not specific and legitimate, let alone clear and convincing, reasons

24 supported by substantial evidence in the record.

25      Another reason given by the ALJ for rejecting plaintiff's testimony was plaintiff's receipt

26 of unemployment benefits during the relevant period at issue.  In this regard, the ALJ stated that

27 "[u]nemployment compensation required the claimant to certify that he was willing and able to

28 engage in work activity, which is inconsistent with his allegation of disability."  (Id.)

11

1   However, "while receipt of unemployment benefits can undermine a claimant's alleged

2   inability to work fulltime," a plaintiff's allegations of disability are only inconsistent with the

3   plaintiff's testimony if the plaintiff "held himself out as available for full-time" work.  Carmickle

4   v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008).

5   Here, plaintiff testified that after he was terminated he "was trying to work up to getting

6   into interviews but [his] medical issues seemed to always get in the way . . . ."  (Tr. at 47.)  In this

7   regard, the record here does not establish whether plaintiff held himself out as available for full-

8   time or part-time work.  See generally Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005)

9   ("That Webb sought employment suggests no more than that he was doing his utmost, in spite of

10   his health, to support himself.").

11   The ALJ also found that because "[t]he record indicates that the claimant stopped working

12   in September 2007 partly due to business-related reasons," this raised "a question as to whether

13   the claimant's impairments are as debilitating as he has alleged."  (Id. at 26.)  Plaintiff explained,

14   however, that after being involved in a vehicle accident plaintiff was "laid off."  (Id. at 47.)  The

15   "official reason" given was the slowing housing market, but plaintiff believes "there was a lot to

16   do with [him] missing work and having doctors' appointments," and his employer having to

17   adjust "to what [plaintiff] was able to do."  (Id.)  That is consistent with plaintiff's alleged

18   disability.

19   The ALJ also asserted that plaintiff made "inconsistent statements."  (Id. at 26.)  In this

20   regard, the ALJ stated that in a June 20, 2012 function report, plaintiff reported "he does not

21   spend time with others or do any shopping," but a May 23, 2011 mental consultative examination

22   found that plaintiff's daily activities included "visiting his family and friends, talking on the

23   telephone, and going to the grocery store."  (Id.)

24   This characterization, however, misstates the degree of inconsistency between the two

25   records as something other than minor.  Both the function report and the mental consultative

26   examination reflect that plaintiff lived with, and visited with, his family, and had few additional

27   social interactions.  The May 23, 2011 consultative examination reflects that plaintiff stated that

28   "he used to have more friends," but "his closest friend now is his brother . . . ."  (Id. at 353.)

12

1  Moreover, the June 20, 2012 function report states that plaintiff does not shop because he has "no

2  money-no car-don't get out much." (Id. at 296.)

3       Another reason given by the ALJ for rejecting plaintiff's testimony was that plaintiff

4  "showed no persuasive evidence of debilitating pain or discomfort while testifying at the

5  hearing." (Id. at 26.) However, "[t]he ALJ's observations of a claimant's functioning may not

6  form the sole basis for discrediting a person's testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th

7  Cir. 2007); see also Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance

8  on his personal observations . . . at the hearing has been condemned as 'sit and squirm'

9  jurisprudence."); Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a

10 claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little,

11 if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his

12 allegations of constant pain are not credible.").

13      Finally, as with the medical opinion evidence, the ALJ found that plaintiff's activities of

14 daily living were inconsistent with the severity of his alleged impairments. (Tr. at 26.) The Ninth

15 Circuit, "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

16 activities . . . does not in any way detract from [his] credibility as to [his] overall disability.'"

17 Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also

18 Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead

19 normal lives in the face of their limitations"); Cooper, 815 F.2d at 561 ("Disability does not mean

20 that a claimant must vegetate in a dark room excluded from all forms of human and social

21 activity."). In general, the Commissioner does not consider "activities like taking care of

22 yourself, household tasks, hobbies, therapy, school attendance, club activities, or social

23 programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c).

24      For the reasons stated above, the court finds that the ALJ failed to offer clear and

25 convincing reasons for rejecting plaintiff's testimony.

26 ////

27 ////

28 ////

1    **B.     Testimony of Plaintiff's Mother**

2         The ALJ also rejected the third party statements offered by plaintiff's mother.  (Tr. at 29.)

3    The testimony of lay witnesses, including family members and friends, reflecting their own

4    observations of how the claimant's impairments affect her activities must be considered and

5    discussed by the ALJ.  Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at

6    1232.  Persons who see the claimant on a daily basis are competent to testify as to their

7    observations.  Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

8    1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give

9    reasons germane to each particular witness in doing so.  Regennitter, 166 F.3d at 1298; Dodrill,

10   12 F.3d at 919.

11        Here, the ALJ afforded the statements offered by plaintiff's mother "little weight" because

12   she was "not an acceptable medical source and lack[ed] the medical proficiency to render a

13   reliable opinion on the claimant's limitations."  (Tr. at 29.)  This statement is clearly erroneous.

14   Lay witness testimony is by definition testimony not provided by an acceptable medical source.

15   And the ALJ must consider lay witness testimony.  "Clearly, family members who see the

16   claimant on a daily basis are competent to testify as to their observations."  O'Bosky v. Astrue,

17   651 F.Supp.2d 1147, 1163 (E.D. Cal. 2009).

18        The ALJ went on to state that the statements were inconsistent with plaintiff's observed

19   functioning at several consultative examination, plaintiff's conservative treatment, and plaintiff's

20   daily activities.  (Tr. at 29.)  As noted above, the court has already rejected those findings as

21   erroneous.  See also Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law

22   could the ALJ discredit her lay testimony as not supported by medical evidence in the record.");

23   Stillwater v. Commissioner of Social Sec. Admin., 361 Fed. Appx. 809, 812 (9th Cir. 2010)

24   ("More, specifically, the ALJ found the lay testimony credible, yet gave the testimony no weight

25   because the lay witnesses were not medical experts and their opinions were 'not supported by the

26   entire evidence.'  We have specifically rejected this approach.").  In this regard, the ALJ failed to

27   give a germane reason for rejecting the lay witness testimony.

28   ////

                                                      14

1  Accordingly, the court finds that plaintiff is entitled to summarize judgment with respect

2  to the claim that the ALJ's treatment of the subjective testimony constituted error.

3  CONCLUSION

4  With error established, the court has the discretion to remand or reverse and award

5  benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  A case may be remanded

6  under the "credit-as-true" rule for an award of benefits where:

7
8
9
10
> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed
> to provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

11  Garrison, 759 F.3d at 1020.  Even where all the conditions for the "credit-as-true" rule are met,

12  the court retains "flexibility to remand for further proceedings when the record as a whole creates

13  serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social

14  Security Act."  Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

15  ("Unless the district court concludes that further administrative proceedings would serve no

16  useful purpose, it may not remand with a direction to provide benefits."); Treichler v.

17  Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ

18  makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand

19  the case to the agency.").

20  Here, the record has been fully developed and further administrative proceedings would

21  serve no useful purpose.  In this regard, the record includes multiple medical opinions, medical

22  evidence, plaintiff's testimony, the testimony of a lay witness, and the testimony of a vocational

23  expert.  As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting

24  multiple items of evidence.  And the vocational expert's testimony established that, if the

25  improperly discredited evidence were credited as true, the ALJ would be required to find the

26  claimant disabled on remand.  (Tr. at 56-59.)  Moreover, the record as a whole does not create

27  serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security

28  Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 18) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 21, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\gonzales1771.ord

16